Vt. State Employees' Ass'n v. Vt. Agency of Natural Res., No. 517-7-10 Wncv (Crawford, J., Jan. 6, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| WASHINGTON COUNTY | |

VERMONT STATE EMPLOYEES'
ASSOCIATION

v.                                                          DOCKET NO.: 517-7-10 Wncv


VERMONT AGENCY OF NATURAL
RESOURCES


-and-

VERMONT STATE EMPLOYEES'
ASSOCIATION

v.                                                          DOCKET NO.: 518-7-10 Wncv

VERMONT DEPARTMENT OF HUMAN
RESOURCES


### DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

These are two requests for public records made by the Vermont State Employees' Association upon two state agencies. The issue in each case is the same: whether the agency is authorized by the Public Records Act, 1 V.S.A. §§ 315–320, to charge a fee for the inspection of records.

#### Facts

The facts are not in dispute in either case. In Docket No. 517-7-10, the VSEA—the state employees' union—requested information about the elimination of a state wildlife scientist position and the consequent layoff of a state employee. In Docket No. 518-7-10, the VSEA sought information about the decision by the Department of Human Resources to purchase and install software to monitor employee use of the internet. In both cases, the VSEA requested an opportunity to *inspect* the records. It did not request copies.

Not surprisingly, the relevant records in both cases existed mostly in electronic form as emails and various attachments. Because the records are in electronic form (or, in a few cases, in paper in files which should remain intact), the agencies printed out or copied the records.

The two state agencies kept track of the employee time spent in responding to the requests.  Each agency followed the procedure developed by the Secretary of State's office to guide agencies in responding to requests for copies of records.  The first 30 minutes are free; staff time is charged thereafter at various rates (generally between $19.80 and $34.00 per hour).  At these rates, the proposed time charges were $462.60 for the ANR request and $807.98 for the DHR request.

ANALYSIS

The issue in this case is one of statutory interpretation.  Section 316(a) provides sweeping authorization for the inspection of public records during business hours without regard to cost.

> Any person may inspect or copy any public record or document of a public
> agency, on any day other than a Saturday, Sunday, or a legal holiday . . .

1 V.S.A. § 316(a).  Prior to 1996, the only cost-recovery provision in the Act for agencies responding to such requests read as follows:

> If a photocopying machine or other mechanical device maintained for use
> by a public agency is used by the agency to copy the public record or
> document requested, the person requesting the copy may be charged the
> actual cost of providing the copy, which cost may be collected by the
> public agency.  Nothing in this section shall exempt any person from
> paying fees otherwise established by law for obtaining copies of public
> records or documents, but if such fee is established for the copy, no
> additional costs fees shall be charged.

1 V.S.A. § 316(b) (1995).

These provisions date from 1975 when, in the wake of the Watergate scandal, many states followed the federal government in enacting open government laws.  See David E. Pozen, *Deep Secrecy*, 62 Stan. L. Rev. 257, 314 n.204 (2010).  Thirty-five years ago public records were principally maintained on paper, and a request to inspect resulted in the production at a counter of a physical file or carton.  Vermont's statute allowed a charge for the service of duplicating (copying) requested documents, but it never allowed any charge for the inspection itself.  Inspection, which provides the transparency intended by the Act, was free.

In 1996, the legislature expanded on the Act's cost-recovery provision.  The amendment broadened § 316(b) by allowing the recovery of "costs associated with mailing or transmitting the record by facsimile or other electronic means."  1995, No. 159 (Adj. Sess.), § 1.  It also added this:

> In the following instances an agency may also charge and collect the cost
> of staff time associated with complying *with a request for a copy of a*

2

>*public record*: (1) the time directly involved in complying with the request exceeds 30 minutes; (2) the agency agrees to create a public record; or (3) the agency agrees to provide the public record in a nonstandard format and the time directly involved in complying with the request exceeds 30 minutes. The agency may require that requests subject to staff time charges under this subsection be made in writing and that all charges be paid, in whole or in part, *prior to delivery of the copies*. Upon request, the agency shall provide an estimate of the charge.

1 V.S.A. § 316(c); 1995, No. 159 (Adj. Sess.), § 1.

The plain language of § 316(c) expressly carries forward the distinction between inspection and copying that preexisted the amendment. The authority to "charge and collect the cost of staff time" under § 316(c) is triggered by a "request for a copy of a public record," not by a request to inspect records. The legislature was not conflating the concepts of "copy" and "inspection" in this new statutory language. The reference to the "delivery of the copies" makes clear that the legislature is referring to duplicates that the requestor will take possession of.

The State observes that, in an era of electronic recordkeeping, it is nearly impossible to allow a member of the public to inspect records, which are electronic, without first copying them so that they can be inspected. The clear distinction between inspecting and copying when the Act originally was adopted no longer matters so much—electronic records cannot be handed over the counter in a box. The expanded cost-recovery provisions of the 1996 amendment suit this reality awkwardly. They permit cost-recovery for staff time when there is a request for a copy, but not when there is a request to inspect, even though the costs incurred by the agency may be largely the same.[1]

The State thus invites the court to interpret away the statutory distinction between inspections and requests for copies and allow it to charge staff time for inspections. It would be reasonable, perhaps, to impose a charge for an electronic search and the printing-out of email documents. Except in municipal land records, the days when the job of searching and copying could be largely turned over to the requestor standing at a file cabinet disappeared about the same time as leaded gasoline. Any request now requires considerable staff-time to conduct an electronic search of some kind.

Does this mean that any request now justifies a bill from the agency? The bills in these cases are not enormous; nor are they unreasonable in amount for the work involved. But they are not minor either and for many Public Records requestors a charge of $500 or $800 would deter inquiry.

---

[1] The expanded cost-recovery provisions appear to be particularly toothless considering that one presumably could make a burdensome request for inspection and then make one's own copies on a portable photocopier, avoiding the cost-recovery provision entirely. The State characterizes an interpretation yielding such an outcome as absurd. The outcome, however, is a function of history, technology, and the statutory language. To the extent that the State perceives a problem in the framework of the Act, it can raise those concerns with the legislature. The court cannot rewrite the statute.

The court declines to accept the State's position for several reasons. First—and most importantly—the statute provides no authority for an agency to impose a charge for inspection of documents. The Act always has permitted the free inspection of public records. The 1996 amendment did not change that. There is no indication in the language of the amendment of any legislative intent to impose such a charge for the first time in the Act's existence. The expanded cost-recovery provisions of the 1996 amendment still are contingent on a request for copies of records; inspection is free.

The one item of legislative history in the record, a memorandum of the state archivist, who participated in hearings related to the 1996 amendment, confirms this. In the memorandum, he explains that the purpose of the amendment was to clarify issues related to costs imposed for copies, and that the matter of charging for inspection itself was never considered.

An amendment to § 316 was introduced in the senate in 2008 that would have imposed charges for inspections. 2007 S. 229 (Adj. Sess.) (bill as introduced), § 1. That language did not survive the senate's approval of S. 229 and was not resuscitated thereafter. See 2007 S. 229 (Adj. Sess.) (bill as approved by senate), § 1; 2007, No. 110 (Adj. Sess.).

The cases cited by the State are not persuasive. The State argues that the Supreme Court effectively has interpreted the statute twice and this court has done so once in the same manner that the State does. *Sawyer v. Spaulding*, 184 Vt. 545, 548 (2008); *Herald Ass'n, Inc. v. Dean*, 174 Vt. 350, 359 (2002); *Judicial Watch, Inc. v. State of Vermont*, No. 656-12-03 Wncv, 2004 WL 5452936 (Vt. Super. Ct. Feb. 13, 2004) (relying exclusively on *Herald Ass'n*). However, none of these cases squarely addressed the issue presented here—whether the distinction between inspection and copying matters. In all 3 cases, no cost-recovery issue appears to have been raised by the parties and the courts' references to those provisions are unnecessary to the decisions. They are little more than acknowledgments of a cost-recovery mechanism; they resolve no disputes about how it operates on any particular set of facts.

Second, the legislature has recognized that compliance with the Act will place burdens on state and local government. 1 V.S.A. § 315 (recognizing that compliance with the Act may cause "inconvenience or embarrassment"). Unless the statute is amended further, the burden of inspection is part of the cost of government to be borne by the polity at large and not imposed upon individuals or organizations seeking information. This is not an unreasonable legislative decision. An individual—aggrieved, or a gadfly, or a visionary—is likely to be in a poor position to pay for the cost of her inquiries. But as taxpayers and members of the community, we all benefit from these inquiries because government (like the rest of us) behaves best in an open, public setting. These principles are plainly articulated in § 315:

> It is the policy of this subchapter to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution.

The cost-recovery procedures proposed by the State would hamper such openness, are not supported by the language or history of the Act, and would alter the Act significantly.

For these reasons, the court grants the motions for summary judgment filed by the VSEA and grants judgment in favor of the plaintiff. The defendant's motions for summary judgment are denied.

Dated:                        _____

                                              Geoffrey Crawford,
                                              Superior Court Judge